## Chesapeake & Ohio Railway Co. v. Hopkins.

(Decided December 5, 1911.)

## Appeal from Floyd Circuit Court.

Railroads—Action Against for Destruction of Property by Emission of Sparks from Engine—Evidence.—In an action against a railroad company for injury to property caused by sparks emitted from its engines, evidence examined and held that the evidence supports the verdict awarding damages was authorized.

WORTHINGTON, COCHRAN & BROWNING, M. C. KIRK, W. S. HARKINS and JOSEPH D. HARKINS for appellant.

J. C. HOPKINS, JR. and F. A. HOPKINS for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

On April 17, 1909, F. A. Hopkins had a large boundary of his land in Floyd County, Kentucky, burned over by fire. The fire not only destroyed considerable fencing and many saw logs, but injured the growing timber as well. The Chesapeake and Ohio Railway runs through this farm for some distance, and shortly before the fire was discovered on said date a double-header freight train passed over the road. Charging that the fire originated from sparks emitted by one or both of these engines, Hopkins instituted a suit against the road, in which he sought to recover damages in the sum of $500.00

for the injury to his property. The railroad company denied liability, and attempted to show that the fire did not originate from sparks thrown off by its engines, but was started by some prospectors operating upon the plaintiff's land. On this issue the case was submitted to a jury, with the result that the plaintiff recovered a verdict for the amount sued for.

Several reasons were assigned in the lower court why a new trial should be granted, but upon appeal here but one of these grounds is pressed, to-wit, that a peremptory instruction should have been given, on the theory that the evidence did not support the allegations in the petition.

There is a coaling station a short distance below appellee's farm, and this train stopped there and coaled. It was running some twenty or thirty minutes late. When it passed through appellee's land, according to the testimony of some six or eight witnesses, these engines were throwing off or emitting large volumes of smoke, and, according to one witness, fire with the smoke, thus evidencing that they were pulling hard. All of the witnesses who testify as to the origin of the fire state that it started shortly after the train passed. Some say that it was before the train had entirely passed that the fire sprang up, while others state that it was as much as ten, twenty or thirty minutes after the train passed before they saw the fire. These apparently conflicting statements as to the time are no doubt due to the vague and indefinite idea which the witnesses had of time; but when they are all considered together it is apparent that the fire was discovered a few minutes after the train passed.

The evidence likewise shows that, when first discovered, it was down near the railroad track, on or near the right of way, which at that point was a hundred feet wide, fifty feet each way from the center of the track. It is also testified to that there was fire on the opposite side of the railroad which started about the same time as the fires on the side where the damage was done. Unquestionably this was some evidence that the fire was started by sparks emitted by these engines.

But, on behalf of the railroad company, it is shown that the engines in use on its road, and particularly the ones that were pulling this train, were equipped with the latest and most approved spark arresters. To meet this evidence, appellee shows that trains passing along the road had at that same point and near theretofore set fire

to the right-of-way and land adjoining. And it is a fact bearing upon the condition of the spark arresters which was entitled to go to the jury, that if upon the day in question sparks from these particular engines started a fire some fifty feet or more from the right-of-way, the spark arrester upon that particular engine was not in perfect condition, else it would not have permitted sparks to escape large enough to start a fire after being carried fifty feet from the engine. When all of the evidence is read the conclusion is irresistible that the fire complained of was started by sparks emitted from these engines; and it is some evidence that the spark arresters thereon were not serving their proper purpose when they permitted the escape of sparks large enough in size to be carried fifty feet or more from the train and set fire to appellee's property. The proof shows that fires were started in two or three places along the right-of-way there; and it further shows that the right-of-way at that point was permitted to become fouled with grass, weeds and other inflammable material. Even if the spark arresters were in perfect condition, and yet sparks escaped therefrom and set fire to this inflammable material along the right-of-way, and spread from that onto appellee's premises to his damage, the company would be none the less liable; for the statute imposes upon it the duty to keep its right-of-way free from weeds, grass and other combustible material, as a means of preventing the spread of fire and consequent damage on account thereof.

The court did not err in refusing to give the peremptory instruction asked. The evidence abundantly supports the verdict as to the damage done by this fire.

Judgment affirmed.